Filed 8/13/25  P. v. Ross CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083452 |
| v. | (Super.Ct.No. FSB032199) |
| RODNEY LEWIS ROSS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Gregory S. Tavill, Judge.  Affirmed.

Reed Webb, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

1

Rodney Lewis Ross appeals from the trial court's denial of his petition for resentencing under Penal Code section 1172.6 following an evidentiary hearing. (Unlabeled statutory references are to the Penal Code.)  We affirm.

BACKGROUND

I.      *The convictions*

In 2002, the People charged Ross and Kelly Brooks with one count each of robbery (§ 211), the attempted murder of Ras Najibu Edge on September 29, 2001, (§§ 187, subd. (a), 664), and the first degree murder of Edge on the same night (§ 187, subd. (a)).  Ross and Brooks were tried together before separate juries.  (*People v. Brooks* (Mar. 24, 2005, E033507) [nonpub. opn.].)  Ross's jury convicted him of attempted murder, found true associated firearm and gang enhancement allegations, and hung on the robbery and murder counts.  Brooks's jury convicted him of first degree murder and robbery and found true special circumstance allegations and gang enhancement and firearm enhancement allegations.  (*People v. Brooks*, E033507.)

At a subsequent trial, a jury convicted Ross of one count of first degree murder and one count of first degree residential robbery.  The jury also found true special circumstance allegations of robbery-murder and burglary-murder and a gang enhancement allegation and several firearm enhancement allegations.

II.     *Trial testimony*

Karmella G. testified for the prosecution in both trials.  On September 29, 2001, she and Edge were engaged to be married, and she was with Edge at his apartment.

2

Shortly after midnight, Karmella heard a commotion outside the apartment.  She opened the front door and saw Edge fighting with four men while attempting to walk up the stairs to the apartment.[1]  Karmella recognized and identified Ross and Brooks as two of the men.  One of the four men pointed a gun at Edge's head.  The person attempted to pull the trigger, but the gun did not fire.  Ross yelled, "'Shoot him.  Shoot him.'"  When the gun did not fire, Edge ran into the apartment and closed the door.

Shortly after the fight, Karmella heard people running up the stairs and then kicking the front door.[2]  She ran into the bedroom with Edge, where they hid in a closet.  Ross and Brooks came into the bedroom, and one of them "snatched" Edge from the closet and threw him onto the bedroom floor.  Ross carried a handgun, and Brooks had a shotgun.  Ross demanded, "'You have five seconds to give me the money and dope.'"  Edge gave Ross some drugs, but Ross was not satisfied with the amount.  Ross hit Edge on the side of the head with the gun.  Brooks then stepped forward and shot Edge with a shotgun from a distance of about one foot.  Edge died as a result of a shotgun wound to his abdomen.

---

[1]     We take the facts about the fight on the stairs from Karmella's testimony at the first trial, because the attempted murder conviction was based on what occurred during that fight and Karmella's testimony in the two trials varied in a way significant to that conviction.

[2]     We take the facts about the events that occurred after the fight from Karmella's testimony at the second trial, because the murder conviction was based on the events that transpired in Edge's apartment after the fight.

Ross's defense at trial was that he was not with Brooks at Edge's apartment when Brooks killed Edge. Ross did not testify at trial. Kristie A. testified for the defense as an alibi witness.[3] She testified that Ross, Brooks, and two other men were at her apartment the night of the killing. The four men left her apartment around 10:30 p.m. and returned about 30 minutes later. Upon their return, Brooks said that he and Ross had fought with someone in a nearby apartment complex. Brooks said that he pulled out a gun, but it jammed. Brooks repeatedly said that he was going to return to kill the person.

Brooks eventually left Kristie's apartment with two other men. Ross stayed behind at Kristie's for about 10 minutes and then left to go elsewhere to eat. Brooks returned 10 minutes later. Brooks was covered in blood and said that he killed Edge. Brooks's brother, who was at Kristie's apartment, left to get Brooks a change of clothes and later returned with Ross, who attempted to calm down Brooks.

III.    *Closing argument*

In closing argument at Ross's second trial, the prosecutor argued that Ross was "guilty as charged of everything" based on the evidence that he broke into Edge's apartment, chased him and Karmella into the bedroom closet, and beat Edge over the head before Brooks pulled the trigger and killed Edge.

Defense counsel argued that Ross was not in Edge's apartment when Brooks killed Edge. He surmised that Karmella misidentified Ross.

---

[3]    Kristie testified at the first trial but was unavailable at the second trial, so her previous testimony was read to the jury.

4

IV.     *Section 1172.6 proceeding*

In October 2022, Ross filed a petition for resentencing under former section 1170.95 (now section 1172.6). The trial court appointed counsel for Ross, found that Ross had stated a prima facie case for relief, and issued an order to show cause.

Ross testified at the subsequent evidentiary hearing. Ross admitted that he, Brooks, and others had fought with Edge the night that Edge was killed, but Ross said he was not present when Edge was killed. Ross said that he stayed at Kristie's apartment when Brooks later returned to Edge's apartment, and Ross did not return to that apartment.

Both counsel argued after Ross testified. The People questioned Ross's credibility, pointing out inconsistencies with his version of events and those provided by Kristie at trial. The court interjected: "I mean, the jury didn't buy the alibi defense. I don't believe that you can use this proceeding to ask the Court to come to a conclusion that is contrary to what the jury found." The People clarified that they were not relitigating the issue and just noting that Ross was not credible. The People otherwise argued that the evidence proved that Ross aided and abetted, instigated, and facilitated the intentional killing of Edge beyond a reasonable doubt.

Ross's counsel argued: "I believe that under the new law, I don't believe that Mr. Ross's conduct, as he testified to today in court, indicates that he was at all involved in the murder. He was merely involved in a fight." With respect to counsel's claim that Ross was not present for the commission of the robbery and murder offenses, the court

5

repeated what it had told the People: "Because the jury found that he was [present]. And like I said, I don't think you can use this proceeding to say, 'We disagree with that finding from the jury.' The jury already determined that." Defense counsel argued that the People had not proved beyond a reasonable doubt that Ross acted as an aider or abettor or as a major participant in the underlying felony and with reckless indifference to human life.

The trial court denied the petition, concluding that the People proved beyond a reasonable doubt that Ross was guilty of attempted murder and murder under now-valid theories. As to the murder count, the court found that the People proved beyond a reasonable doubt both that Ross had "actual intent to kill when he aided and abetted Mr. Brooks" and that Ross was a major participant in the robbery and acted with reckless indifference to human life.

DISCUSSION

Ross contends that the trial court prejudicially erred by considering itself bound by the jury's findings, thus precluding Ross from relitigating the alibi defense that he raised at trial. We disagree.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) eliminated natural and probable consequences liability for murder and narrowed the definition of first degree felony murder by amending sections 188 and 189. (*People v. Gentile* (2020) 10 Cal.5th 830, 843, 847, superseded by statute on another ground as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 868-869.) Section 188, subdivision (a)(3), now prohibits

6

imputing malice based solely on an individual's participation in a crime and requires proof that a principal in a crime acted "with malice aforethought" to convict a principal of murder, except as stated in section 189, subdivision (e). Subdivision (e) of section 189 now provides that "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [of section 189] in which a death occurs is liable for murder only if" the People prove one of the following: (1) The person was the actual killer (§ 189, subd. (e)(1)); (2) the person "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree" (*id.*, subd. (e)(2)); or (3) the person "was a major participant in the underlying felony and acted with reckless indifference to human life" (*id.*, subd. (e)(3)). (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

The bill also created section 1172.6 (originally codified as section 1170.95) as a mechanism for retroactive application of those changes in the law. (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) A person convicted under a now-invalid theory of murder liability can petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if the individual could not now be convicted of murder because of the changes to sections 188 and 189. (§ 1172.6, subd. (a).)

If a petitioner makes a prima facie showing that they are entitled to resentencing relief under section 1172.6, the trial court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c), (d)(1).)

7

Section 1172.6, subdivision (d)(3) (section 1172.6(d)(3)), provides that at the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."

"On appeal from the denial of a section 1172.6 petition after an evidentiary hearing, we review the superior court's factual findings for substantial evidence and the court's application of the law to those facts de novo." (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1066.)

Ross argues that the trial court erred by declining to consider his alibi defense. We disagree. The court correctly determined that the factual finding that Ross was actually present when Edge was killed is beyond the scope of the issues that can be relitigated in a section 1172.6 proceeding.

Although the trial court does act as an independent factfinder at the evidentiary hearing (*People v. Schell* (2022) 84 Cal.App.5th 437, 442), the court's factual determinations are "limited to the issues made relevant by the changes to the law effected by Senate Bill 1437" (*Gomez v. Superior Court* (2024) 100 Cal.App.5th 778, 787). At

8

the evidentiary hearing, "the trial judge is charged with determining, beyond a reasonable doubt, if the petitioner is guilty of murder under a theory that remains valid after the amendments to the substantive definition of murder." (*People v. Vargas* (2022) 84 Cal.App.5th 943, 952 (*Vargas*).) "Although the parties may offer new or additional evidence to meet their respective burdens, section 1172.6, subdivision (d)(3) does not contemplate a whole new trial on all the elements of murder." (*Ibid.*; *People v. Clements* (2022) 75 Cal.App.5th 276, 298 (*Clements*) [same]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 678 (*Daniel*) [§ 1172.6 does not "authorize[] a defendant to present new evidence to undermine a jury's finding of guilt under a particular theory of murder, effectively retrying the case"].) "Instead, the parties will focus on evidence made relevant by the amendments to the substantive definition of murder." (*Clements*, at p. 298.) "Thus, the focus at the evidentiary hearing phase of an 1172.6 petition is 'on evidence made relevant by the amendments to the substantive definition of murder,' which, in the context of section 188, requires 'the prosecution to prove that all principals to a murder acted with malice aforethought.'" (*Vargas*, at p. 952, quoting *Clements*, at p. 298.)

By convicting Ross of murder and robbery, the jury necessarily rejected his alibi defense and found that he was present with Brooks when Brooks killed Edge. The prosecution did not proceed under any theory of murder liability not predicated on Ross's presence at the scene. Likewise, no theory was presented under which Ross could be found guilty of robbery or the robbery-murder or burglary-murder special allegations

9

could be found true if Ross was not present in the apartment when the robbery and the burglary occurred.

The purpose of the section 1172.6(d)(3) evidentiary hearing was not to relitigate whether Ross was present but rather to determine the extent of Ross's involvement in the crime under a now-valid theory of murder liability. (*Daniel*, *supra*, 57 Cal.App.5th at p. 678 [rejecting argument from a defendant convicted as an actual killer that he could present evidence at an evidentiary hearing that he was an aider and abettor].) The role of the court was limited to ascertaining whether Ross aided and abetted Brooks with the intent to kill (§ 189, subd. (e)(2)) or "was a major participant in the underlying felony and acted with reckless indifference to human life" (*id.*, subd. (e)(3)). Ross could not relitigate factual findings not relevant to those issues and thereby "effectively retry[] the case." (*Daniel*, at p. 678; *Clements*, *supra*, 75 Cal.App.5th at p. 298.) Relitigating Ross's alibi defense was not an issue "'made relevant by the amendments to the substantive definition of murder,'" so the jury's factual finding rejecting that defense could not be relitigated at the evidentiary hearing. (*Vargas*, *supra*, 84 Cal.App.5th at p. 952.) As the Supreme Court has explained, the Legislature did not intend section 1172.6 "to permit wholesale relitigation of findings supporting murder convictions in the context of section 1172.6 resentencing." (*Strong*, *supra*, 13 Cal.5th at p. 715; *Curiel*, *supra*, 15 Cal.5th at p. 451.)

Moreover, section 1172.6 does not authorize a court to vacate a robbery conviction. (§ 1172.6, subd. (a).) Rather, section 1172.6 would permit the court to

10

resentence Ross on the robbery count, but only if the court vacated the murder conviction or the attempted murder conviction. (§ 1172.6, subds. (a), (d)(1).) Ross's alibi defense applies equally to the robbery count and to the murder count. Therefore, because the trial court was not permitted to vacate the robbery conviction, it likewise was not permitted to second-guess the jury's rejection of Ross's alibi defense.

For these reasons, we conclude that Ross's challenge to the trial court's order denying his section 1172.6 petition fails.

DISPOSITION

The order denying Ross's petition for resentencing under section 1172.6 is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.

11